UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2015 AUG 13 PM 1:56
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA )
)
)
v. ) Case No. 1:09-cr-1091-DPW
)
)
RALPH F. DELEO, )
Defendant )
)

**MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE UNDER 28 U.S.C. § 2255**

The defendant disposes and states for his motion:

**Timeliness of § 2255 Motion**

The judgment was entered on November 21, 2012. A timely notice of appeal was filed November 30, 2012. Limitations period began running on October 20, 2014, the date of the denial of certiorari. **See In re Smith, 436 F .3d 9 (1st Cir. 2006).** Due date for filing defendant's §2255 motion is October 20, 2015.

FILED IN CLERKS OFFICE 2015 AUG 13 PM 1:56 U.S. DISTRICT COURT DISTRICT OF MASS.

## GROUDS FOR VACATUR OF PLEA

### 1. Inadequate Plea Colloquy

In this case the Rule 11 procedure was not followed because two seperate change of plea hearings were held on two different days. The Rule 11 plea colloquy was conducted at the plea hearing on May 24, 2012. This hearing was abruptly ended by a power failure before the defendant could enter his guilty plea. However, due to the power failure he did not enter his plea until seven days later, at the second change of plea hearing held on May 31, 2012. There is considerable evidence that in the interim the defendant's physical and cognitive state on May 31 was drastically altered from when his plea colloquy was conducted on May 24.

On May 31 the defendant's blood pressure measured an alarming **260/122** that was measured by the courthouse nurse just prior to his plea. **See Attachment "A" Courthouse Medical Record.** The defendant was experiencing **chest pains** and **dizziness** at the time. There is considerable medical evidence

that the defendant's condition was life-threatening and affected him cognitively.

On May 14, 2012, the defendant was examined by cardiologist Ryan J. Broderick, at the Brigham and Women's Cardiovascular Center. Dr. Broderick is also a professor at the Harvard University Medical School. Dr. Broderick measured the defendant's blood pressure at **220/140** on that day. Dr. Broderick opined that; **"there was an extremely high risk that Mr. DeLeo's aorta could rupture...that his condition carried a significant risk of death."** On May 31 during the plea hearing the hearing the defendant's blood pressure was significantly higher at **260/122**, placing the defendant in immense danger of his aorta rupturing, causing instantaneous death.

What occurred on May 31 adversely impacted the fairness, integrity of the judicial proceedings. The U.S. Marshal's knowing and intentionally not only placed the defendant's life in mortal danger because they intentionally did not notify the EMT's of the defendant's critical condition but also

inexplicably failed to inform the Court.

On May 31 the omission of the colloquy was especially important due to the defendant's critical condition. Here it was not a mere "variance" from the requirements of Rule 11 but a complete omission of the entire Rule 11 colloquy.

To establish plain error the defendant contends that; (1) an error occurred; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings.

In this case the defendant was prejudiced by the complete omission of Rule 11 plea colloquy and by external factors that affected his substantial rights. These events support a finding that exceptional circumstances occurred, and the need for redress evident.

## 2. Deficient Pretrial Medical Care Coerced Defendant's Plea

The defendant's motive for pleading guilty was to quickly obtain medical treatment for his life-threarening medical

condition, that he was not receiving proper treatment for in pretrial detention at the Wyatt Detention Facility. Not to avoid contesting the government's case. Thus, the defendant's guilty plea was a non-voluntary product of coercion.

The defendant could not assert his coercion claim until after he had been safely transferred out of Wyatt and into an Federal Medical Center. Only then could he proclaim his innocence to anyone but his attorney, and attack his guilty plea by filing on direct appeal without fear of being returned to Wyatt, where his medical condition was exacerbated.

There is considerable evidence by this Court that clearly establishes the life-threatening deficiency of the defendant's pretrial medical care while under the supervision of the U.S. Marshal Service. When the AUSA told the Court that the defendant could go back to Wyatt, the Court replied:

> Once burned, twice shy. I am not really interested in enabling the Bureau of Prisons to send him back to Wyatt during this time period.
>
> ... [T]his is a real screw up and certainly not what I had anticipated, and

> I do not want to continue it.
> .....[D]uring the period that he had is under pretrial supervision in this Court ...medical needs that he had were not attended to for various reasons. Maybe we will find out sometime entirely what happened, but I do not mean to have that continue.

In response to the Court's inquiry, the AUSA said he did not know whether the care that the defendant would receive under the U.S. Marshal's at Wyatt would be consistent with a BOP level IV facility. The Court responded:

> If something happens to Mr. DeLeo during this time period that he has been sent back to an inadequate facility, my own view is that this is a Knowing and intentional refusal to provide him with adequate care on the record.
>
> ...
>
> I, frankly, am somewhat astonished by the bureaucratic quality to all of this, perhaps on a misbegotten assumption that qualified immunity will be available for those who Knowing and intentionally engage in this kind of activity. I merely note that.
>
> I have no idea what caused Mr. Deleo's elevated blood pressure today...

The Court commented that the BOP designation process here had "bureaucratic," and the BOP was:

> [I]ndifferent to the defendant's documented medical needs, serving only there own view about how it is that one goes about designating...
>
> ...
>
> But, ultimately, Mr. DeLeo will be designated to a facility if the recommendation is one that would lead to a federal medical center. I believe, and there is on the record now a very substantial basis for even bureaucrats to be concerned about their own personal interest, should something untoward befall Mr. Deleo.

The record clearly shows exceptional circumstances of the defendant's deficient pretrial medical care. The record support a finding of exceptional circumstances, and the need for redress evident, that did affect his substantial right to trial.

3. **The U.S. Marshal Service and Counsel Knowing and Intentionally Failed to Bring The Defendant's Emergency Medical Condition to the Court's Attention On May 31.**

Ten minutes before the defendant entered his plea he notified the Marshal's that he was experiencing chest pains and dizziness. The Courthouse nurse was called and the defendant's blood pressure was measured twice. The first reading was

**256/120**, the second **260/122. See Attachment "A"**. The Marshal's Knowing that the defendant's blood pressure was at an extremely critical level, and being especially critical for a person who has an aortic aneurysm, intentionally refused to provide him emergency medical care.by refusing to call the EMT"S to immediately transport him to a hospital. Instead the Marshal's rushed him into the Courtroom to enter his plea. This refusal of standard emergency medical protocol underscores the defendant's claim that his motive for pleading guilty was to quickly obtain medical treatment that he was not getting in pretrial detention at Wyatt under the Marshal's supervision.

The Marshal's intentionally did not notify the Court of the defendant's condition adversely impacting the fairness, integrity, or public reputation of the judical proceedings, to keep the Court from postponing the plea due to medical emergency.

Known symptons of rapidly increasing blood pressure of 180/120 or higher are: Blurred vision, Chest pain (angina), Difficulty breathing, Dizziness, Severe headache, Change of

mental status, Confusion, and in the defendant's case Aortic rupture. In this instance case the defendant was experiencing some of the symptons that were obvious: Chest pain, Dizziness, Headache, and Blurred vision.1 **See Attachment "B"**

The defendant personally notified his counsel that he needed to go to the hospital due to his exceptionally high blood pressure. Moments later when the Court asked if the defendant's blood pressure was a problem, Counsel answered **No.** At the conclusion of the hearing counsel stated; **"I made an error"** by not notifying the Court.

At that point Counsel was **ineffective**, his error in not notifying the Court of the defendant's critical condition, was an error so serious that at that moment counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment.

These claims involves facts totally outside the record

---

1. At the present time the petitioner in waiting to be seen by ophthalmologist for blurred vision due to untreated high BP.

therefore, the defendant requests an evidentiary hearing to establish the record as to why the U.S. Marshal's did not notify the Court, Whether or not the prosecution was notified, and why counsel did not notify the Court. Also to produce medical testimony to establish with medical exactness the symptoms the defendant would be suffering that would affect **changes of mental status.** These exceptional circumstances show if true that the defendant's plea was not knowing and voluntary.

4. **Plea Agreement Documents Do Not Bare the Defendant's Signature. See Pending Motion to Vacatur Plea Agreement, Under Fed. R. Civ. 60(b)(3).**

The defendant did not enter into a written plea agreement. The plea agreement does not contain the signature of the defendant. Thus, casts further doubt that the defendant entered into the plea agreement voluntary. The signature on plea agreement documents is the prima facie proof of the validity of the plea, to signify that the defendant knowing and voluntarily entered into the plea agreement. In this case

the plea agreement documents **do not** bare the defendant's signature acknowledging that he has read, understood and voluntarily entered into the agreement/contract.

This Court has on file letters and motions that bare the defendant's signature. A visual comparison is clear evidence that the signature on the plea documents is not the defendant's. Under contract law, a forged signature renders a contract/agreement void ab initio.

This claim involves exceptional circumstances that are totally outside the record. Therefore, the defendant requests an evidentiary hearing to establish with scientific exactness by expert testimony whether the signature on the plea agreement documents are in fact the defendant's or not.

5. **Defendant's Substantial Rights Were Affected - Structural Error.**

Here the record supports the defendant's claim that his guilty plea was the product of coercion due to the lack of medical treatment in pretrial detention rather than free will.

(1) The fear of death before the defendant was able to stand trial is a motivating factor; (2) There is abundants of evidence of the defendant's life-threatening condition. (3) The plea colloquy did not comply with Rule 11 - because it was held seven days before the plea was entered. (4) The defendant was not in the same state of mind as when he entered the plea seven days later because of the affects of life-threatening blood pressure of 260/122. (5) The U.S. Marshal's and Counsel failed to notify the Court of the defendant's critical condition to prevent the Court from postponing the plea. (6) The signature on the plea agrement documents do not bear the defendant's signature. (7) The defendant repeatedly proclaimed his innocence to his attorney. Who advised the defendant not to mention his innocence or coercion to the Court because the Court would not except the plea, which may cause the defendant to die at Wyatt from the lack of Medical care. Thus, the defendant had to delay his effords to attack his plea until after he was sentenced and safely transferred to a BOP medical facility.

The errors here are structural because what occurred here was "pervasive" and "debilitating" because it forced the defendant to plead guilty and give up his entire right to trial.

6. **The "Totality of the Circumstances" Test and Plain Error**

In conducting its plain-error review, this Court considers the "totality of the circumstances" in addition to the circumstances of the plea colloquy. Under this test, this Court considers as relevant the factors the defendant proffered to in withdrawing his plea. (1) the force and plausibility of the proffered reasons; (2) the timing of the request; (3) whether asserts legal innocence; and (4) whether the parties reached a plea agreement.

All four prongs of this test have been satisfied here. The proffered reasons for renouncing the plea were defects in the plea procedure and duress born of inadequate medical treatment.

As the record clearly shows, there was almost no colloquy

when the plea was entered. The defendant's dire medical condition at the time of the plea is also well documented. The Knowing and intentional concealment of the defendant's life-threatening medical condition from the Court by the U.S. Marshal's and counsel, at the time of the plea hearing. The plea agreement document's do not bare the defendant's signature. And finally, the defendant suffering from the effects physically and cognitively, while desperately trying to obtain sufficient treatment for it, the defendant's will was overborne. These circumstances show that his plea was not Knowing and voluntary.

As previously discussed, the defendant could not attack his guilty plea until he had been sentenced and his district court case dispossed of. If he had, he would have remained at Wyatt pending trial, would not have received the care he urgently needed. There is strong evidence that if he did not receive the urgent care he needed his aorta may have ruptured causing instant death. Therefore, that is why he did not file a motion to withdraw his plea before sentencing, and only

proclaim his legal innocence to his attorney, who advised him not to mention his innocence or coercion to the Court out of concern that the Court would not except the plea the defendant may die while waiting trial without sufficient medical care. Here, the defendant's inaction was justified because any assertion of innocence or coercion and effords to withdraw his plea would have prolonged his pretrial detention at Wyatt. Thus, increasing the probaility that he would die there.

The record shows that the errors were not "harmless." If the defendant was receiving sufficient medical care for his perilous condition, he would not have felt the need to quickly plead guilty and he could have waited for trial.

Even if the defendant were not able to make that showing, he would be entitied to relief because the error here was "structural," and therefore exemp from harmless error review.

The errors here affected the entire conduct of the plea proceeding from the beginning to end.

The error here is structural because it forced

the defendant to entirely forego his right to trial, and it is impossible to quantify the effect of that error because it is impossible to know what would have occurred if he pressed for trial.

## CONCLUSION

Based on the claims that are **outside the record** the defendant request that an evidentiary hearing be granted, and for reasons set forth in the defendant's §2255 motion, he respectfully request that this Court find that his guilty plea was not Knowing and voluntary, and therefore vacate it and his convictions.

Respectfully submitted,

Dated: August 4, 2015

Ralph F. DeLeo, Pro se
#36950-133
FCI Allenwood-med
P.O Box 2000
White Deer, PA 17887

CERTIFICATE OF SERVICE

I hereby certify that I have mailed the original §2255 motion to Sarah A. Thomton, Clerk, and a copy to Assistant U.S. Attorney, Timothy Moran, on this day, August 4, 2015

Sarah A. Thomton
office of the Clerk
U.S. District Court
J.J. Moakley Courthouse
One Courthouse Way
Boston, Ma 02210

Timothy Moran
Assistant U.S. Attorney
J.J. Moakley U.S. Courthouse
One Courthouse Way
Suite 9200
Boston, Massachusetts 02210

Ralph F. DeLeo, Defendant
#36950-133
FCI Allenwood-med
P.O Box 2000
White Deer, PA 17887