**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. 09-10391-DPW** |
| | ) | |
| **RALPH F. DELEO** | ) | |
| Defendant. | | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S PETITION TO VACATE
SENTENCE AND REQUEST FOR SUMMARY DISMISSAL OF PETITION**

The United States, by and through its undersigned attorneys, hereby opposes Ralph DeLeo's petition pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence and requests that the Court dismiss the petition in summary fashion. As the government discusses at length below, there are a host of procedural barriers to most of DeLeo's § 2255 petition. Furthermore, DeLeo's claims fail on their merits.

**I.  STATEMENT OF THE CASE**

  **A. Defendant's Conviction**

On December 17, 2009, a federal grand jury returned an indictment charging Ralph DeLeo with a single count of RICO conspiracy in violation of 18 U.S.C. § 1962(d). Specifically, the indictment alleged that DeLeo was the head of the "DeLeo Crew" and the former acting Street Boss of the Colombo Family of La Casa Nostra. On April 24, 2012, a Superseding Information charged DeLeo with the same RICO conspiracy and being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1).

On May 24, 2012, DeLeo entered into a written plea agreement with the government pursuant to Fed. R. Crim. P. 11(c)(1)(C) and executed a written stipulation of facts, which were filed in open court (under seal for the stipulation) during the initial change of plea hearing. DeLeo agreed to plead guilty to the superseding information, waiving indictment. The agreed-

upon disposition under Rule 11(c)(1)(C) was a term of incarceration between 210 and 235 months, a fine of $50,000, and 36 months of supervised release.

A change of plea hearing had been scheduled for April 24, 2012, but the hearing was continued when DeLeo's counsel informed the Court of DeLeo's longstanding problem with high blood pressure, noting that when they met prior to the hearing, DeLeo "seemed to be somewhat disoriented." Although he "was willing to go forward [on April 24] and, indeed, wanted to get it over with," he was dizzy and suffering from a splitting headache. [Apr. 24 Plea Hr'g Tr. at 3:13-4:3]. The hearing was rescheduled to May 24, 2012.

On May 24, 2012, the Court commenced a colloquy under Fed. R. Crim. P. 11, during which DeLeo affirmed, *inter alia*, that: (1) he understood what he was being charged with; (2) he had had adequate time to discuss the case with his counsel and was satisfied with his counsel's representation; (3) the plea agreement was the entire agreement that he had entered into with the government; (4) no one had promised him anything outside of what was set forth in the plea agreement; and (5) he understood that he was pleading guilty to serious charges with serious consequences. [May 24 Plea Hr'g Tr. at 5:11-7:3].

The Court specifically inquired as to whether DeLeo had been taking any prescription drugs during the previous two weeks. [May 24 Plea Hr'g Tr. at 11:1-6]. DeLeo responded that he had been prescribed medication to regulate his blood pressure but had not taken it during the past two weeks. [May 24 Plea Hr'g Tr. at 11:7-16]. The Court asked whether the failure to take medication was interfering with DeLeo's ability to make "a clear eyed-judgment here about whether or not to plead guilty," and DeLeo responded, "No." [May 24 Plea Hr'g Tr. at 11:17-21]. The Court also made specific inquiries into DeLeo's physical condition, asking whether it was interfering with his ability to make an informed decision about pleading guilty, and DeLeo

again responded, "No." [May 24 Plea Hr'g Tr. at 12:12-20].

The government then summarized the evidence that it would have presented at trial. The government described the defendant as a made member of the Columbo Family of La Cosa Nostra and the head of the "DeLeo Crew," which was a criminal organization based in Somerville, Massachusetts. [May 24 Plea Hr'g Tr. at 16:5-18]. The government described the DeLeo Crew's engagement in criminal activity from at least 2008 through 2009, including but not limited to cocaine and marijuana trafficking, extortion, and the collection of an extension of credit by extortionate means in various locations, and engaging in interstate travel in aid of racketeering. [May 24 Plea Hr'g Tr. at 16:18-19:12]. The government further stated that DeLeo possessed eleven firearms and over a thousand rounds of ammunition, and that at the time of the possession he had been found guilty of a felony offense punishable by a year or more in prison. [May 24 Plea Hr'g Tr. at 19:13-20:8]. Also found with the firearms and ammunition were a silencer, police uniforms, police patches from at least three different departments, wigs, masks and zip ties. [May 24 Plea Hr'g Tr. at 19:19-22].

DeLeo did not dispute the evidence the government presented. [May 24 Plea Hr'g Tr. at 20:25-21:5]. At this point, however, the change of plea hearing was interrupted by a power outage and fire alarm, causing the Court to adjourn.

On May 31, 2012, the district court reconvened, continuing the proceedings from where they had left off the week before. The Court again inquired into DeLeo's physical condition, having been informed that DeLeo was concerned about his blood pressure. The Court asked, "[a]re you in a physical condition to continue?" DeLeo responded, "I believe so, your Honor."[1]

---

[1] DeLeo appears to misstate the record with regard to this exchange in his brief. He writes, "[m]oments later when the Court asked if the defendant's blood pressure was a problem, Counsel answered 'No.'" It was not counsel, but DeLeo himself who answered the court's inquiry as to his blood pressure.

3

[May 31 Plea Hr'g Tr. at 3:19-22]. The Court then asked whether DeLeo had any questions with respect to his plea, to which DeLeo responded, "No, your Honor." [May 31 Plea Hr'g Tr. at 3:23-4:4]. The Court then found that DeLeo's willingness to waive the indictment and enter a plea to the information was knowing and voluntary, and that the plea itself was a "knowing and voluntary act." [May 31 Plea Hr'g Tr. at 4:13-18]. The Court also explained that it would not accept the plea formally until it had had an opportunity to review the Presentence Report and decide whether to accept the recommendations made by the parties in the plea agreement. [May 31 Plea Hr'g Tr. at 4:19-25]. DeLeo then formally pleaded guilty to both counts of the superseding information, and the Court again stated that it found the plea to the information to be knowing and voluntary. [May 31 Plea Hr'g Tr. at 5:10-17].

### B. Defendant's Sentencing

The Court conducted DeLeo's sentencing hearing on three separate dates, November 1, November 8, and November 21, 2012. The government asked the court to accept the plea and recommended a sentence of 235 months of imprisonment. [Nov. 21 Sentencing Tr. at 5:15-18]. DeLeo's counsel also asked the Court to accept the plea and recommended a sentence of 210 months of imprisonment. [Nov. 21 Sentencing Tr. at 10:8-13]. DeLeo, in his allocution, asserted that the government's sentencing memorandum contained false and misleading statements and specifically alleged that a law enforcement agent had threatened to have him killed in prison if he refused to cooperate. [Nov. 21 Sentencing Tr. at 14:25-15:14]. The Court accepted DeLeo's guilty plea, imposed a sentence of 235 months incarceration, adjusted to 199 months to account for the time DeLeo had already served, a $50,000 fine, and three years of supervised release, and entered judgment. [Nov. 21 Sentencing Tr. at 18:11-19:8].

## C. Procedural History

DeLeo filed a notice of appeal from the judgment on November 30, 2012. [Docket No. 184]. He sought review of his guilty plea on the ground that there was no affirmative showing that his plea was knowing and voluntary given the week-long lapse between the Rule 11 colloquy and his guilty plea. DeLeo further argued that the plea was not knowing and voluntary because he believed that by pleading guilty he would be reassigned to a facility that could provide him with medical treatment. In a pro se supplemental brief, DeLeo also argued that his signatures on the plea documents were forged, which the Court of Appeals never considered.

On June 3, 2014, the First Circuit granted the government's motion for summary disposition and affirmed. [CoA. No. 12-2440]. The Court reasoned that DeLeo "failed to show that the district court committed a clear and obvious error in not repeating the warnings at the second hearing or that the outcome would have been different had those warnings been given a second time." [First Circuit J. at 1]. DeLeo then petitioned for a writ of certiorari which was denied. [Docket Nos. 262, 263].

## D. The Petition

DeLeo offers various reasons and arguments for his petition. However, DeLeo basically asserts three grounds in support thereof. First, DeLeo asserts that his guilty plea was not knowing and voluntary. DeLeo puts forth two arguments in support thereof. He first argues that the Court failed to follow proper procedure in his change of plea hearing in violation of Fed. R. Crim. P. 11. In particular, DeLeo claims that the Court erred in failing to repeat the Rule 11 colloquy in the continuation of the defendant's plea hearing following adjournment due to power failure. During the seven day interim, DeLeo argues, his health worsened, and as such his plea was not knowing and voluntary. DeLeo also argues that inadequate pretrial treatment for his

medical treatment made his plea non-voluntary. DeLeo cannot succeed on this claim because it is procedurally barred.

Second, DeLeo argues that his counsel rendered ineffective assistance for failing to notify the Court during the second day of the Rule 11 hearing about DeLeo's heart condition. Though this claim is not procedurally barred, it fails on the merits.

Finally, DeLeo asserts a claim that the plea agreement documents do not bear his signature, a claim that is procedurally barred, is completely without merit, and has already been raised in a pro se motion to vacate plea currently pending before the Court, [Docket 219].

## II.  GENERAL LEGAL PRINCIPLES GOVERNING § 2255 PROCEEDINGS

### A. Habeas Review Under 28 U.S.C. § 2255

Title 28, United States Code, Section 2255 provides a means for collateral attack on the sentence under which a federal prisoner is confined. United States v. Haymen, 342 U.S. 205 (1952). The law is "well-settled" that "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). "A presumption of finality attaches to criminal convictions once all direct appeals have been exhausted." Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994); see also Barefoot v. Estelle, 463 U.S. 880, 887 (1983). "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Frady, 456 U.S. at 167–68.

In order for relief to lie under § 2255, the claim must be cognizable; that is, the claimed error must be jurisdictional, constitutional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of

fair procedure." United States v. Addonizio, 442 U.S. 178, 185 (1979); Hill v. United States, 368 U.S. 424, 428 (1962). Simply put, "postconviction relief on collateral review is an extraordinary remedy, available only on a sufficient showing of fundamental unfairness." Singleton, 26 F.3d at 236; see also Brecht v. Abrahamson, 507 U.S. 619, 634 (1993). In particular, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984). As discussed below, DeLeo's ineffective assistance of counsel claim is cognizable, but his claims that his plea is invalid and that his signature was forged are not.

    **B.**  **Section 2255's Basic Procedural Requirements**

  Petitioners seeking relief under § 2255 must also satisfy several procedural obstacles to be entitled even to proceed with a motion to vacate. The first, of course, is the duty to file such petitions in a timely fashion. All non capital habeas petitions in the federal courts are subject to a one-year statute of limitations period that usually runs from the date on which "the judgment becomes final" by the conclusion of direct review or the expiration of the time for such review. 28 U.S.C. § 2255(f)(1). DeLeo's judgment issued on October 20, 2014 when a petition for a writ of certiorari was denied. [Docket No. 263]. Accordingly, this petition is timely.

  Second, a § 2255 petitioner may not raise a claim on collateral review that was not raised both in the district court and on direct appeal. Bucci v. United States, 662 F.3d 18, 29 (1st Cir. 2011), cert. denied, 133 S.Ct. 277 (2012). Petitioner may re-litigate issues that could have been raised on direct appeal, but were not, only upon a showing of cause excusing the default and actual resulting prejudice. See United States v. Frady, 456 U.S. 152, 167–68 (1982); Suveges v. United States, 7 F.3d 6, 10 (1st Cir.1993) (a party must show cause and prejudice to raise an objection not argued on direct appeal in a § 2255 motion). To establish "actual prejudice," a

petitioner must demonstrate "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170. "Actual innocence" means "factual innocence." Bousley v. United States, 523 U.S. 614, 623 (1998).

However, a claim of ineffective assistance of counsel, which DeLeo has raised here, can constitute cause sufficient to excuse procedural default as to that claim. Bucci, 622 F.3d at 29. "Failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under 2255." Massaro v. United States, 538 U.S. 500, 509 (2003). As such, DeLeo's ineffective assistance of counsel claim is not procedurally defaulted. As will be explained in further detail below, his invalid plea claim and his forged signature claim, however, are procedurally defaulted.

### III. Summary Disposition of Section 2255 Claims

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 1998) (affirming summary dismissal of § 2255 petition). Like every other § 2255 petitioner, DeLeo thus bears the "heavy burden" of demonstrating, by a preponderance of the evidence, not only that he is entitled to relief under § 2255, but also that there are factual disputes that entitle him to an evidentiary hearing. See, e.g., Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

In keeping with this principle, the First Circuit has held that "summary dismissal is appropriate when the section 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case."

Barrett, 965 F.2d at 1186 (quotation omitted). Further, "when, a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225.

For the reasons stated below, the Court should deny the petition without a hearing. See David v. United States, 134 F.3d 470, 478 (1st Cir. 1998) (even if not conclusively belied by the record, § 2255 petitions based on vague, conclusory or incredible claims may be summarily dismissed); United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978) (summary dismissal of § 2255 petition is appropriate where it "(1) is inadequate on its face; or, (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case").

### IV. DELEO'S CLAIM THAT HIS PLEA WAS INVALID WAS NOT PRESERVED AND IS NOT COGNIZABLE

DeLeo's claim that his plea was not knowing and voluntary does not meet the high procedural bar that is set for § 2255 petitions. As is discussed in more detail below, DeLeo fails to show that he preserved the alleged errors relating to his guilty plea, which do not fall within any exception to the preservation requirement. Furthermore, DeLeo fails to show that his invalid plea claim is cognizable because he fails to show that the claim of legal error amounts to a violation of his substantial rights.

#### A. DeLeo Failed to Preserve the Alleged Rule 11 Hearing Errors, Which Do Not Fall Within Any Exception to the Preservation Requirement

1. *Standard*

A defendant may not raise on collateral review a claim that was not raised both in the district court and on direct appeal. See Bucci, 662 F.3d at 29. This requirement applies to all of DeLeo's claims, including his claim regarding his plea: "even the voluntariness and intelligence

9

of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley, 523 U.S. at 621.  DeLeo did not raise the issue of the voluntary and knowing nature of his plea in the district court.  [First Circuit J. at 1].  However, an exception to this general rule exists when a defendant can show 1) cause for his procedural default and actual prejudice; or 2) actual innocence.  See Bousley, 523 U.S. at 622.  Because DeLeo cannot show either cause and actual prejudice or actual innocence, he may not raise these claims which he failed to raise previously.

2.   *The Defendant Cannot Show Cause or Actual Prejudice*

The First Circuit has further defined "cause" and "actual prejudice."  See Fernandez-Malave v. United States, 502 F. Supp. 2d 234, 239 (D.P.R. 2007).  "Cause" for procedural default is measured against a stringent standard of diligence and "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising a claim."  Id. at 239.  Therefore, the existence of cause for procedural default purposes depends on the prisoner's ability to show that an objective factor external to the defense impeded compliance with procedural rules.  Id.

DeLeo has not, and cannot, show cause for his failure to preserve his invalid plea claim. In particular, DeLeo could have sought to revoke his plea of guilty at any time during the seven day interim between beginning and completing his change of plea hearing, before his sentencing, or even during any of his three sentencing hearings.  DeLeo claims that he was unable to withdraw or challenge his guilty plea because it would have required him to return to the Wyatt Detention Facility where DeLeo claims he received inadequate medical care.  DeLeo cites no authority for the proposition that a medical need, even if true, constitutes cause for procedural default.  Moreover, as a factual matter, this claim is simply not credible.

As the record makes clear, at various points in DeLeo's case the Court inquired as to DeLeo's medical condition and took steps to ensure he was placed in facilities that would meet his medical needs. For example, in August 2012, between DeLeo's change of plea and his sentencing, the Court granted DeLeo's motion for medical treatment and a study to "address his physical limitations and long-term management of his chronic hypertension." [Docket 136]. Familiar with DeLeo's dissatisfaction with his treatment at Wyatt, [Docket 134 at 2], the Court went so far as to specify the location, FMC Fort Devens, where DeLeo should undertake this study and receive medical care. Later, at the first day of DeLeo's sentencing hearing, at which point the Court had still could have moved to withdraw his plea) the Court took steps to ensure that if sentenced, DeLeo would not return to Wyatt. [Nov. 1 Sentencing Tr. at 9:3-5]. The Court confirmed that in fact DeLeo would go back to FMC Devens upon sentencing. [Nov. 1 Sentencing Tr. at 8:16-18]. As such, defendant's argument that he could not withdraw his plea because he would be sent to the Wyatt Detention Facility pending trial is simply unsupportable.

In addition to showing cause for a procedural default, a prisoner must also establish "actual prejudice." Bousley, 523 U.S. at 619. The term "actual prejudice" requires that DeLeo demonstrate that he was actually prejudiced by the error of which he complains. Id. at 622. Furthermore, "actual prejudice" requires more than a mere possibility of prejudice: it requires a showing that the alleged error "worked to [defendant's] actual and substantial disadvantage." Id. A defendant who files a § 2255 motion and claims actual prejudice bears a greater burden than he would under the plain error standard applicable to forfeited claims on direct review. See Ramirez-Burgos v. United States, 313 F.3d 23, 32, n. 12 (1st Cir. 2002) (finding prisoner failed to show "actual prejudice" because claim would not warrant relief under the less demanding plain-error standard). Here, DeLeo fails to show, or even argue, actual prejudice. It would be

11

hard to do so where DeLeo executed a detailed statement of facts underlying the conviction and admitted that the prosecution could prove those facts to a jury.

### 3. *DeLeo Cannot Show "Actual Innocence"*

Where a defendant cannot establish cause and actual prejudice, a defendant may still assert a claim of "actual innocence." The Supreme Court has interpreted "actual innocence" to mean "factual innocence of the crime of conviction, not mere legal insufficiency." See Bousley, 523 U.S. at 622. In order to establish actual innocence a defendant must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Fernandez-Malave, 503 F.Supp.2d at 239. DeLeo again fails to show, or even argue, actual innocence, and cannot where he executed a detailed statement of facts and admitted those facts in court. Because DeLeo has not, and cannot, demonstrate these necessary elements, DeLeo is procedurally defaulted from asserting this claim. See Bousley, 523 U.S. at 622.

### B. DeLeo's Invalid Plea Claim Is Not Cognizable

Even if DeLeo's invalid plea claim overcomes the procedural barriers, which, as discussed above, it does not, the Court should also find the claim to be cognizable. In order for a claim to be cognizable under § 2255, DeLeo must assert one of only four possible claims: 1) that his sentence was imposed in violation of the Constitution or laws of the United States; 2) that the court was without jurisdiction to impose such a sentence; 3) that the sentence was in excess of the maximum authorized by law; or 4) that the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a).

Reading DeLeo's petition in a generous light, DeLeo may be attempting to make a constitutional argument for lack of due process. However, this argument fails, as DeLeo cannot show that his invalid plea claim is cognizable when the First Circuit has already considered his

claim and found no error. The First Circuit noted in its judgment that the "[d]efendant has failed to show that the district court committed a clear and obvious error in not repeating the warnings at the second hearing." [First Circuit J. at 1].

Furthermore, as the First Circuit also found, even if the Court had erred in not repeating the plea colloquy, any error would have been harmless, not a violation of DeLeo's substantial rights. [First Cir. J. at 1]. In United States v. Cotal-Crespo, the First Circuit found harmless error when the record was "replete with evidence that the defendants understood the charges against them, faced up to them, and chose voluntarily to plead guilty." 47 F.3d 1, 8 (1st Cir. 1995). As in Cotal-Crespo, the record here makes clear that DeLeo understood and admitted to the factual basis for his plea, weighing in favor of a harmless error finding. And even if DeLeo's medical condition had deteriorated before the hearing, he was given the opportunity to advise the Court that he was unable to proceed. He instead confirmed that he was in physical condition to continue. [May 31 Plea Hr'g Tr. at 3:19-22]. As such, DeLeo has not established that his claim falls under any of the four categories of cognizability.

### C.  Any Potential Error Does Not Entitle DeLeo to Relief

If the Court finds DeLeo's invalid plea claim survives both procedural default and the cognizability analysis, DeLeo is still not entitled to relief as this claim fails on the merits. First, as discussed above, DeLeo executed a plea agreement, separately stipulated to the facts underlying the crimes, and admitted the factual basis for the plea. As such, any error would have been harmless, as the First Circuit already found. Second, also discussed in detail above, DeLeo had numerous opportunities to withdraw his plea before sentencing and failed to do so. Third, DeLeo's own statements belie his current assertions. The below exchange occurred during DeLeo's May 24 change of plea hearing:

13

> THE COURT: Now, you have been prescribed some drugs, but you are not taking them. Is that interfering with your ability to make a clear-eyed judgment here about whether or not to plead guilty?
>
> THE DEFENDANT: No.

[May 24 Plea Hr'g Tr. at 11:17-21]. In his petition, however, DeLeo contradicts his prior sworn statements at the plea hearing, which are entitled to a presumption of truthfulness, United States v. Butt, 731 F.2d 75, 80 (1st Cir.1984); see also Guay v. United States, No. 07-CV-282SM07, 2007 WL 3102032, at *1 (D.N.H. Oct. 23, 2007). Because nothing in DeLeo's § 2255 motion, or in the record, suggests any "credible, valid reasons why a departure from those earlier contradictory statements is now justified," Butt, 731 F.2d at 80, he has failed to overcome the presumption of truthfulness of his own statements during the plea colloquy. In sum, DeLeo's claim fails on the merits and should be dismissed.[2]

## V. DELEO'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS FRIVOLOUS AND SHOULD BE DISMISSED

DeLeo's second claim, that his counsel rendered ineffective assistance for failing to inform the Court of his medical condition prior to his guilty plea, is not procedurally barred and is cognizable as an alleged Sixth Amendment violation. However, DeLeo is still not entitled to relief because this claim fails on the merits.

### A. DeLeo Carries a Heavy Burden of Proof Under Strickland

The Sixth Amendment states that "in all criminal prosecutions, the accused shall enjoy the right . . . to have assistance of counsel for his defense." U.S. Const. Amend. VI. "It has long been recognized that the right to counsel is the right to effective assistance of counsel."

---

[2] Moreover, even if DeLeo's assertions were true, he would be to blame because he refused to take the medication prescribed for him. As the Court noted at DeLeo's sentencing, "[t]he defendant, apparently, has some of his own views about what medical treatment is appropriate." [Nov. 1 Sentencing Tr. at 16:4-6]. He should be estopped from raising this claim now.

14

McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970).  The Supreme Court, however, has held that "judicial scrutiny of counsel's performance must be highly deferential."  Strickland v. Washington, 466 U.S. 668, 689 (1984).  Courts must "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  Id. at 689.

The standard employed for determining the merits of ineffective assistance claims is whether the assistance of defense counsel was reasonably competent, that is, whether the quality of defense counsel's representation was within the range of competence expected of attorneys in criminal cases.  United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978).  Moreover, even deficient representation is legally insignificant unless accompanied by actual prejudice.  Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (noting petitioner "must show both deficient performance by counsel and resulting prejudice").

In Strickland, the Supreme Court set forth a two-prong test for a claim of ineffective assistance of counsel.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 686.  Second, the defendant must show that counsel's errors were so serious as to prejudice the defendant.  Id. at 691–92.  A § 2255 petitioner must make these showings by a preponderance of the evidence.  See, e.g., Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993); Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992).  In Hill v. Lockhart, the Supreme Court established that the Strickland analysis also applies to ineffective assistance of counsel claims in the guilty plea context, and it is thus applicable here.  474 U.S. 52, 59–60 (1985); see also Gould v. United States, 657 F. Supp. 2d 321, 326 (D. Mass. 2009).

### B. DeLeo Has Failed to Establish Ineffectiveness Under Strickland

####    1.    *DeLeo's Claim Fails the First Prong of Strickland*

DeLeo's baseless assertions of deficient performance simply do not meet the first prong of the Strickland test. To satisfy this prong, a § 2255 petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. As stated by the First Circuit, "[t]his aspect of the test presents a formidable hurdle, as the court begins with the presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" Hoyos-Medina v. United States, 989 F.2d 484 (1st Cir. 1993) (quoting Strickland, 466 U.S. at 669).

As DeLeo's ineffectiveness claim is both legally and factually baseless, it simply does not clear this "formidable hurdle." First, DeLeo's claim lacks legal merit. Counsel's failure to inform the Court that DeLeo's health was in critical condition prior to his change of plea on May 31, 2012 simply does not fall below an objective standard of reasonableness. In a similar case in which defense counsel failed to secure a mental health examination prior to defendant's change of plea, the First Circuit found that counsel was not ineffective because the court was aware of the defendant's mental deficiencies and "[took] pains to ensure [defendant's] rights were protected. United States v. Dedrick, 16 F. App'x 10, 13–14 (1st Cir. 2001). Similarly here, the Court was aware of DeLeo's physical condition and took steps to ensure the plea was nonetheless voluntary.

Moreover, in addition to lacking legal merit, DeLeo's claim is factually unsupported. Counsel did press the issue of DeLeo's health at several junctures in the case, demonstrating his awareness of his client's ongoing condition and his ability to raise it with the Court. For example, as previously discussed, counsel filed an assented to motion to continue DeLeo's

sentencing hearing on account of his health, which the Court granted. [Docket 137, 138]. Nevertheless, DeLeo claims that counsel was ineffective by "not notifying the Court of the defendant's critical condition," an "error so serious that at that moment counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment." [Petition at 9]. This conclusory statement simply fails to establish that counsel's services fell "below an objective standard of reasonableness" as required by Strickland, 466 U.S. at 688; see also United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (noting court reviewing § 2255 petition "need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets"); Hoyos-Medina, 989 F.2d at *3 (noting "bald assertion cannot support a reversal for ineffective assistance of counsel").

## 2.    *DeLeo's Claim Fails the Second Prong of Strickland*

Next, under Strickland's second prong, DeLeo must also affirmatively prove prejudice, that is, that there is a reasonable probability that, but for his attorney's errors, "he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. DeLeo has not made, and cannot make, such a showing. In fact, the record makes clear that the Court was *already aware* of DeLeo's high blood pressure, and took steps to ensure that DeLeo was prepared to proceed with the plea. As such, defendant has not shown that the result would have been any different had DeLeo's counsel personally notified the Court as to DeLeo's medical condition, which likely would have prompted the Court to do exactly what it did. [May 31 Plea Hr'g Tr. at 3:19-22].

A district court has discretion to dismiss a habeas petition without holding an evidentiary hearing if the petitioner "merely states what counsel's alleged act or omission is without

17

explaining why it constituted 'gross impropriety or prejudicial misconduct.'" Bernier v. Moore, 441 F.2d 395 (1st Cir.1971); see also Gould, 657 F. Supp. 2d at 327. Because DeLeo's ineffectiveness claim fails both prongs of the Strickland test and is both factually and legally baseless, it should be summarily dismissed.

### VI. DELEO'S CLAIM THAT HIS PLEA AGREEMENT SIGNATURES WERE FORGED DOES NOT ENTITLE DELEO TO RELIEF

DeLeo's final argument for relief is that the plea agreement documents do not bear his signature. First, this claim is procedurally defaulted. DeLeo did not raise the claim before the district court, though he had the opportunity to do so, until after his appeal was filed. In addition, the argument was never made to the Court of Appeals. Although DeLeo raised the claim in his pro se supplemental brief on appeal, [Pro Se Supp. Br. of Def.-Appellant at 3], "arguments raised in only a perfunctory and undeveloped manner are deemed waived on appeal." United States v. Sevilla-Oyola, 770 F.3d 1, 13 (1st Cir. 2014). In his brief, DeLeo merely states that "[t]he defendant did not affix his signature to the Plea Agrement [sic], Waiver of the Indictment, nor the Statement of Facts," and claims that his signature on the plea agreement was forged by "an unknown officer of the court." [Pro Se Supp. Br. of Def.-Appellant at 3, 4]. Rather than put forth a viable argument, DeLeo has left "the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Sevilla-Ovola, 770 F.3d at 14, quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). As such, the Court should deem this claim waived and procedurally defaulted.

Furthermore, this claim fails on the merits. This issue has been briefed following defendant's separate motion to vacate the agreement and the guilty plea, [Docket Nos. 219, 220, 221], and the government's position in opposition to that motion is reiterated here: the assertion belies fact and betrays logic and should be dismissed. On May 24, 2012, the first day of

DeLeo's change of plea hearing, the Court at one point asked DeLeo, "Is this the entire [plea] agreement you have with the government?" DeLeo answered "Yes." [May 24 Plea Hr'g Tr. at 6:1-3]. The Court then reviewed with DeLeo the pertinent provisions of the plea agreement, including the binding sentencing range pursuant to Fed. R. Crim. P. 11(c)(1)(C). In fact, the Court corrected a typographical error in the agreement and itself witnessed the parties, including DeLeo, initialing the document that DeLeo now claims was forged. Id. at 7.

In addition to signing the plea agreement, DeLeo signed two other documents that day. DeLeo signed a waiver of indictment form, which was countersigned by the Court and filed in open court that day. [Docket No. 110]. The Court also reviewed the waiver with DeLeo during the hearing. [May 24 Plea Hr'g Tr. at 8-9]. In addition, DeLeo executed a sworn statement of facts, which was submitted to the Court under seal. [Docket no. 108]. The government referred to that document and repeated those facts during the hearing. [May 24 Plea Hr'g Tr. at 15-21]. DeLeo made no claim that his signature on either of those documents was forged until now, *after* the government reminded him of their existence in its opposition to DeLeo's motion to vacate the plea agreement only.

When the hearing was continued on May 31, DeLeo did not object to the plea agreement or the decision to plead guilty. Nor did he object to the plea agreement or withdraw his guilty plea at sentencing, or even suggested to the Court that the signatures on those documents were forged. DeLeo fabricates this argument out of whole cloth, and this claim should be dismissed.

## VII. CONCLUSION

For the reasons stated above, the government respectfully requests that the Court summarily dismiss the defendant's petition to vacate his conviction.

                                Respectfully submitted,

                                CARMEN M. ORTIZ
                                United States Attorney

                By:    /s/ Timothy E. Moran
                         Timothy E. Moran
                         Assistant U.S. Attorney

Date: November 19, 2015

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and by first class mail to the following:

Ralph F. DeLeo
Reg. #36950-133
F.C.I. Butner Medium II
P.O. Box 1500
Butner, NC 27509

                                /s/ Timothy E. Moran
                                Timothy E. Moran
                                Assistant U.S. Attorney

Dated: November 19, 2015