## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | | |
|---|---|---|---|
| **UNITED STATES** | ) | | |
| | ) | | |
| **v.** | ) | **No.** | **09-10391-DPW** |
| | ) | | |
| **RALPH F. DELEO,** | ) | | |
| **Defendant.** | ) | | |

### MOTION TO REDUCE SENTENCE – USSC AMENDMENT 782
### & INCORPORATED MEMORANDUM IN SUPPORT

The defendant, Ralph DeLeo ("the defendant"), by and through undersigned counsel, hereby respectfully submits the following memorandum in support of his motion to reduce sentence pursuant to 18 U.S.C. § 3582.  The defendant respectfully requests he be resentenced to 210 months, to be adjusted downward 36 months by operation of USSG § 5G1.3(b), for a total sentence of 174 months.[1]  As grounds therefor, the defendant avers and states as follows:

### BACKGROUND

On May 31, 2012, the defendant pled guilty to an information charging, *inter alia*, one count of RICO conspiracy, in violation of 18 U.S.C. § 1962(d), and one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  At the time of the defendant's change of plea, the parties tendered a binding plea agreement, pursuant to Fed. R.

---

[1] Undersigned counsel recognizes the ultimate sentence the defendant is recommending herein is less than the 15 year mandatory minimum sentence applicable to the second count of the information to which he pled guilty.  Although the First Circuit has expressly not decided the issue, "[s]ome courts of appeal have nonetheless applied § 5G1.3[b]... to cases involving statutory mandatory minimum sentences, crediting a defendant for time served in an undischarged, concurrent term of imprisonment, so long as the total of the time served and the reduced federal sentence equals or exceeds the statutory mandatory minimum period." *See U.S. v. Ramirez*, 252 F.3d 516, 519 (1st Cir. 2001) (citing *U.S. v. Ross*, 219 F.3d 592, 594-95 (7th Cir. 2000); *U.S. v. Drake*, 49 F.3d 1438, 1440-41 (9th Cir. 1995); *U.S. v. Kiefer*, 20 F.3d 874, 876-77 (8th Cir. 1994)).

Crim. P. 11(c)(1)(C), which this Honorable Court accepted at the time of his sentencing. *See* Dkt. # 107, 183, 199. The terms of the plea agreement called for a possible sentencing range of 210 to 235 months. *See* Dkt. # 107. On November 21, 2012, this Honorable Court sentenced the defendant to a term of 235 months imprisonment (which constituted the "top" of the agreed upon range), adjusted downward 36 months by operation of USSG § 5G1.3(b), for a total term of 199 months.[2]

## ARGUMENT

A "two-step analysis" is employed when a district court must "determine whether to grant a sentence reduction under § 3582(c)(2)." *United States v. Candelaria–Silva*, 714 F.3d 651, 656 (1st Cir.2013). "First, the court determines 'the prisoner's eligibility for a sentence modification and the extent of the reduction authorized.'" *Id*. (quoting *Dillon v. U.S.*, 560 U.S. 817, 827 (2010)). In other words, the purpose of the first stage is to determine "whether [the district court] has the legal authority to grant the reduction requested." *Id.* As to this first step, "a district court may reduce a sentence previously imposed 'in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'" *U.S. v. Hogan*, 722 F.3d 55, 59 (1st Cir. 2013) (quoting 18 U.S.C. § 3582(c)(2)). Further, USSG § 1B1.10(b)(1) requires the court to first "determine the amended guideline range that would have applied to the defendant if the guideline amendments specified in the policy statement (which include Amendment [782]) were in effect at the time of the defendant's initial sentencing." *Hogan*, 722 F.3d at 59. In doing so, the court may substitute only the amended guideline and must 'leave all other guideline

---

[2] In the government's status report, it states this "Court imposed a below-guidelines sentence of 199 months." *See* Dkt. # 311. As is explained more fully below, while it is true that the defendant's *adjusted* sentence ultimately amounted to 199 months, this Court actually sentenced the defendant to a term of 235 months which was then adjusted by 36 months.

application decisions unaffected.' *Id.* "Once a court determines the amended guideline range, it must look to § 1B1.10(b)(2) to see whether and to what extent it can reduce the defendant's sentence." *Id.* Under § 1B1.10(b)(2)(A), "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2)... to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection." As to the second step in the analysis, "the court 'consider[s] any applicable § 3553(a) factors and determine[s] whether, in its discretion, the reduction ... is warranted in whole or in part under the particular circumstances of the case.'" *U.S. v. Zayas-Ortiz*, 808 F.3d 520, 523 (1st Cir. 2015).

Here, the defendant has moved, pursuant to 18 USC § 3582, for a sentencing reduction in light of USSC Amendments 782 and 788, "which retroactively reduced by two levels the base offense level for many drug offenses" under USSG § 2D1.1. *U.S. v. Vaughn*, 806 F.3d 640, 643 (1st Cir. 2015). As framed by the parties in their respective status reports, *see* Dkts. # 311, 317, the primary issue for this Court to resolve is whether *Hogan* and USSG § 1B1.10(b)(2)(A) bars a reduction in light of the particular circumstances presented in this case.[3]

I. **Step One: Whether this Court Has the Legal Authority to Grand the Reduction Requested**

A. <u>The defendant's amended guidelines range</u>

The defendant agrees with and incorporates herein the government's explanation of the defendant's original and amended guidelines ranges. For ease of reference, the government summarized the Pre-Sentence Report ("PRS"), and calculates the defendant's amended guidelines range, as follows:

---

[3] In its status report, the government also argues in a footnote that "the defendant is ineligible for a reduction as the sentence in the binding C plea was insufficiently tied to a guideline sentencing range." *See* Dkt. # 311 at 3 n. 1 (citing *Freeman v. United States*, 131 S. Ct. 2685 (2011) (Sotomayor, J., concurring)). This argument will also be addressed herein.

"The [PSR] grouped the offenses into four groups and scored them as follows: Group One (extortion) adjusted offense level: 26; Group Two (extortion conspiracy) adjusted offense level 24; Group Three (marijuana and cocaine conspiracy), based on responsibility for between 400 and 700 kilograms of marijuana equivalency, adjusted offense level 34; Group Four (felon in possession) adjusted offense level 31. The combined offense level for all four counts was 37. The presentence report determined that the defendant qualified as an armed career criminal ("ACC") pursuant to 18 U.S.C. §924(e) and USSG §4B1.4. The offense level generated by the grouping rules (37) was higher than the otherwise-applicable ACC offense level (34) and, therefore, applied. After subtracting three levels for acceptance of responsibility, the defendant's total offense level ("TOL") was 34. Under the armed career criminal guideline, the defendant was in criminal history category ("CHC") VI. The Court adopted the PSR's guideline calculations and found that the defendant's guideline sentencing range ("GSR") was 262 to 327 months.

...

The revised grouping calculations are as follows: Groups One, Two, and Four are unchanged, with adjusted offense levels of 26, 24, and 31 respectively. Group Three, the drug offenses, is reduced to an adjusted offense level of 32. Under the grouping rules, the total adjusted offense level is 35 and, with a three level reduction for acceptance of responsibility, the total offense level is 32. The defendant is in CHC VI, so his adjusted GSR is 210 to 262 months."

*See* Dkt. # 311 at 1-3.

In sum, the defendant's original TOL was 34 with a corresponding GSR of 262 to 327 months, as calculated by Probation and accepted by this Court at the time of the defendant's sentencing. The defendant's amended TOL is 32 with a corresponding amended GSR of 210 to 262 months. With respect to the guidelines calculations, undersigned counsel also notes for this Honorable Court that, although the defendant qualifies as an ACC pursuant to USSG § 4B1.4, that determination only affected his GSR insofar as it increased his CHC. In other words, both the defendant's original GSR and amended GSR is "based on" the drug quantity table set forth in USSG § 2D1.1, as opposed to the Career Offender table or ACC levels set forth in § 4B1.1 & 4B1.4. *Cf. U.S. v. Caraballo*, 552 F.3d 6, 9-10 (1st Cir. 2008).

B.      The limitation set forth in USSG § 1B1.10(b)(2)(A) serves as no bar to the
        requested sentencing reduction

The First Circuit in *Hogan* has read § 1B1.10(b)(2)(A), as it must, as preventing courts

from "reduc[ing] a defendant's sentence under '18 U.S.C. § 3582(c)(2) and this policy statement

to a term that is less than the minimum of the amended guideline range determined under

subdivision (1).'"   722 F.3d at 62.  As noted above, however, *see* FN 1, *supra*, it is undersigned

counsel's position that the defendant was actually sentenced to 235 months incarceration, but

then was granted a 36 month downward adjustment by operation of USSG § 5G1.3(b), for a total

sentence of 199 months, in light of the fact that the defendant's guidelines range was increased as

a result of relevant conduct for which he has already served prison time in Arkansas.  Similarly,

on resentencing, the defendant is seeking this Honorable Court to impose a sentence within the

amended GSR (210 months), and then grant the same 36 month downward adjustment, by

operation of § 5G1.3(b), for a total sentence of 174 months.  In other words, it is the defendant's

position that a defendant's "term of imprisonment," for purposes of § 1B1.10(b)(2)(A), is the

length of the sentence *before* § 5G1.3(b) credits are applied, because the pre-credit sentence

more accurately reflects the actual "term of imprisonment."  As a result, while § 5G1.3(b) credits

would ultimately have the effect of lowering the amount of time the defendant would have to

serve on the actual sentence to an amount of time below the amended GSR, the actual sentence is

still within the amended GSR and the application of § 5G1.3(b) credits, therefore, does not run

afoul of § 1B1.10(b)(2)(A)'s limitation.

Both the sentencing transcript and the language of § 5G1.3(b) make it clear that this is the

manner in which USSG § 5G1.3(b) operates on a sentence.  First, the government recommended

a sentence of 235 months during the sentencing hearing, and this Court appeared to agree with

that recommendation.  *See* Sentencing Tr., November 21, 2012 at 5 (hereinafter "Dkt. # 199")

("The Government's requesting a sentence of 235 months. That's the top end of that range."); *id.* at 18-19 ("I am satisfied that the upper range of the recommendation or agreement between the parties is the proper one..."). Second, the government clearly evidenced an understanding, at the time the adjustment was granted, that the adjustment would *affect* the sentence this Court actually imposes, as opposed to creating a pre-imposition reduction to the sentence. *See id.* at 9 ("[T]he conduct for which he is serving a sentence in Arkansas did factor into the guideline range here, and he won't be credited for that time, therefore, 5G1.3(b) is applicable, and the Court should adjust downward by 36 months *the sentence he receives...*") (emphasis added). Third and finally, the plain language of § 5G1.3(b) makes clear that it operates to adjust the sentence actually imposed. *See* USSG § 5G1.3(b)(1), 2012 Guidelines Manual ("the court shall adjust *the sentence...*"); USSG § 5G1.3, Application Note 2(C) ("If subsection (b) applies, and the court adjusts the sentence for a period of time already served, the court should note on the Judgment in a Criminal Case Order... the amount of time by which *the sentence is being adjusted...*") (emphasis added).

In short, whereas departures and variances help to establish and create the sentence imposed, the adjustment this defendant received *operated on* the sentence this Court actually imposed. As such, the "term of imprisonment" he is seeking herein is properly reflected as 210 months (i.e. within the amended GSR), which is to be subsequently adjusted by 36 months by operation of § 5G1.3(b) in order to properly effectuate the total term of imprisonment.

Undersigned counsel has been unable to find any appellate decision which either supports or contradicts the defendant's understanding of the manner in which USSG § 5G1.3(b) operates on his sentence. Indeed, the only district court cases undersigned counsel could find on point support the defendant's position. In *U.S. v. Malloy*, 845 F.Supp.2d 475 (N.D.N.Y. Feb. 24,

2012), the defendant's unrevised guidelines range was 120 to 150 months. He was originally sentenced to the bottom of the guidelines range, but was given a 20 month adjustment pursuant to USSG § 5G1.3(b), for a total sentence of 100 months. After filing a motion for sentencing reduction in light of the amendment to the USSG for federal crack cocaine offenders, the parties calculated the defendant's amended GSR as 84 to 105 months. The defendant sought to be resentenced at the bottom of the amended GSR and to have his sentence adjusted downward by 20 months pursuant to § 5G1.3(b), as it had been during the defendant's original sentencing, for a total revised sentence of 64 months. In response to the defendant's motion, the government argued, as it does here, that the defendant's sentence could not be reduced below the bottom of the amended GSR (84 months), by operation of USSG § 5G1.3, due to the limitations set forth in USSG § 1B1.10(b)(2). The *Malloy* court rejected this argument, reasoning as follows:

> Thus, when considered in conjunction with its application note, section 1B1.10(b)(2) is unambiguous; it bars a reduction, whether by departure or variance, that imposes a term of imprisonment below the minimum of the amended guideline range. It does not, however, address a situation, such as this one, where the defendant was given credit for relevant conduct.
> ...
> On the contrary, section 5G1.3 deals with the "[i]mposition of a [s]entence," which is subject to "an [u]ndischarged term of [i]mprisonment." U.S.S.G. § 5G1.3. It applies where, *inter alia*: "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction ... and that was the basis for an increase in the offense level for the instant offense." *Id.* § 5G1.3(b). In such a case, the court must adjust the sentence to account for "any period of imprisonment already served on the undischarged term of imprisonment if [the defendant's federal sentence] will not be credited ... by the Bureau of Prisons." *Id.* § 5G1.3(b)(1). **Simply put, section 5G1.3(b) adjusts only the amount of time the defendant will remain incarcerated in order to fulfill the term of imprisonment imposed.** It follows that section 1B1.10(b)(2) does not bar credits under section 5G1.3(b).

*Malloy*, 845 F.Supp.2d at 482-82 (emphasis added).   As a result, the court resentenced the defendant to the bottom of the amended guidelines range (84 months) and gave him a further 20 month adjustment pursuant to USSG § 5G1.3, for a total revised sentence of 64 months. Therefore, *Malloy* stands for the proposition that where, as here, a defendant is seeking to have his sentence reduced below the amended GSR by operation of USSG § 5G1.3, the limitations set forth in USSG § 1B1.10(b)(2) serve as no bar to the requested relief.   *See also*, *U.S. v. Dean*, No. 3:95-CR-00031-MOC, 2015 WL 5457847, at *4 (W.D.N.C. Sept. 16, 2015) ("Because applying any credit for time served comes only after such § 1B1.10(b)(1) determination, such proposed corrective action does not offend the policy statement of the Sentencing Commission or the direction provided by the [Supreme] Court in *Dillon*."); *U.S. v. Abreu*, --- F.3d ---, 10-CR-789-7 (NGG), 2015 WL 9413100 at *3 (E.D.N.Y. Dec. 21, 2015) ("The Government argued on resentencing, as it does here, that reapplication of § 5G1.3(b) was barred by § 1B1.10 because it would reduce the defendant's sentence below his amended Guideline range... [However, t]he court agrees that a sentence adjustment pursuant to § 5G1.3(b) is best interpreted as a mandatory credit applied in order to effectuate the ultimate term of imprisonment that a defendant will serve, rather than a discretionary departure or variance implicated by § 1B1.10[(b)(2)(A).] Section 5G1.3(b) therefore operates similarly to 18 U.S.C. § 3585(b), pursuant to which the Bureau of Prisons... awards credit for time spent in custody prior to the imposition of a sentence.").

Also in support of the defendant's contention that the application of a credit toward a defendant's sentence pursuant to § 5G1.3(b) does not run afoul of the limitation set forth in § 1B1.10(b)(2)(A) are *Ross*, 219 F.3d at 594-95, *Drake*, 49 F.3d at 1440-41, and *Kiefer*, 20 F.3d at 876-77, cited *supra* at FN 1.  In each of these cases, just as is the case here, the defendant was

subject to the 15 year mandatory minimum penalty provision set forth in 18 USC § 924(e)(1).  In each of those cases, the courts held that a district court had the authority to adjust a defendant's sentence, pursuant to § 5G1.3(b), below the mandatory minimum so long as the total of the time served on the undischarged sentence and the amount of the reduced federal sentence equals or exceeds the statutory mandatory minimum period.  Much like the court in *Abreu*, cited *supra*, the Eighth and Ninth Circuits in *Drake* and *Keifer* considered a district court's application of credits under § 5G1.3(b) as akin to the Bureau of Prisons applying credit for time served under 18 USC § 3585(b), which is not barred in the mandatory minimum context.  This is in recognition that, much like § 3585(b), § 5G1.3(b) merely operates to reduce the amount of time a defendant must serve on the term of imprisonment actually imposed.  In sum, "section 5G1.3(b) adjusts only the amount of time the defendant will remain incarcerated in order to fulfill the term of imprisonment imposed."

Based on the foregoing, USSG § 1B.10(b)(2) does not bar a sentencing reduction where, as here, the defendant is seeking to be resentenced within the amended guidelines range (210 months) with an adjustment to be applied under § 5G1.3(b), just as it was applied during his original sentencing.

C.     The "C" Plea agreed upon by the parties serves as no bar to the sentencing reduction requested herein

The government cites *Freeman v. U.S.*, 131 S. Ct. 2685 (2011) (Sotomayor, J., concurring) for the proposition that "the defendant is ineligible for a reduction as the sentence in the binding C plea was insufficiently tied to a guideline sentencing range."  *See* Dkt. # 311, n. 1. This argument should be rejected for a variety of reasons.  First, Justice Sotomayor's opinion is not binding on this Court.  Second, the defendant urges this Court to adopt the *Freeman* plurality's statement that "[t]here is no good reason to extend the benefit of the Commission's

judgment only to an arbitrary subset of defendants whose agreed sentences were accepted in light of a since-rejected Guidelines range based on whether their plea agreements refer to the Guidelines." Third, and most importantly, the government is taking an entirely contrary position now than it did at the time of sentencing, as to the interplay between the sentencing guidelines and the binding plea agreement. *See* Dkt. # 199 at 6 (AUSA stating: "In the Government's view this is a *Guidelines* case."). To say in 2012 that "this is a *Guidelines* case," and then to say in 2015 that the sentence set forth in the binding plea agreement is somehow not "tied" to the guidelines is troubling to undersigned counsel. Even more troubling is that the "Plea Agreement was a product of long, careful, good-faith negotiations between the parties," which in turn relies heavily on the parties' calculation of the guidelines as a starting point for the agreed upon sentencing range. *See* Dkt. # 199 at 6; Dkt. # 107 (Plea Agreement) at 3-6. Simply put, applying Justice Sotomayor's lone concurrence in *Freeman* to the instant case would work a great unfairness.

## II.     Step Two: Consideration of the § 3553(a) Factors

Through the defendant's motion, he is seeking a 25 month reduction from a 235 month sentence. As this Court recognized during sentencing, 235 months is a serious sentence; it is a long sentence. *See* Dkt.# 199 at 23 (This Court stating: "this case justifies a very substantial sentence, which is what this [235 month sentence] is."). It is a sentence which, according to this Honorable Court, also achieves the aims of specific and general deterrence. So, too, would the very lengthy sentence of 210 months. In terms of the seriousness of the offense, there is no question the crimes to which the defendant has pled guilty are quite serious. It is telling, however, that this Court noted, "[i]s it the most serious RICO case I have ever seen or been

around?  No, it is not, in part because it was inchoate."  *Id.* at 19.  Moreover, as this Court also noted during sentencing, there was no actual physical harm in this case.  *Id.*

Most importantly, this Court stated during sentencing that "I understand the argument that the sentence is very long and Mr. DeLeo's medical condition is vulnerable, but the sentence is not imposed to create a life sentence."  *Id.* at 26.  This is, perhaps, the most important consideration, in undersigned counsel's view, as to whether this Court should grant the defendant's motion for a sentence reduction (assuming this Court agrees with the defendant's "Step One" analysis).  Even if this Court grants the defendant's motion, the defendant will still be over 80 years old when he is eventually released.  The defendant is currently suffering, according to certain unrelated motions the defendant has filed, from serious hypertension and other, similar physical ailments typical of a person of the defendant's advanced age.  In light of this, it may very well be that the sentence imposed *becomes* a life sentence.  If the granting of the instant motion even moderately increases the chance the defendant might be able to live beyond the walls of his prison cell, then its allowance is strongly supported.  Moreover, the defendant's advanced age and failing health likely serve as greater deterrents than the additional two (2) years the defendant would have to serve if the motion was denied.

## CONCLUSION

Based on the foregoing, the defendant respectfully requests this Honorable Court reduce his sentence to 210 months with a 36 month downward adjustment, pursuant to USSG § 5G1.3(b), for a total sentence of 174 months.

Dated: February 12, 2016

Respectfully submitted,
RALPH DELEO
By and through his attorney,

*/s/ R. Bradford Bailey*
R. Bradford Bailey, BBO#549749
BRAD BAILEY LAW, P.C.
10 Winthrop Square, 4th Floor
Boston, Massachusetts 02110
Tel.:   (857) 991-1945
Fax:    (857) 265-3184
brad@bradbaileylaw.com

Certificate of Service

I, R. Bradford Bailey, hereby certify that on this the 12th day of February 2016, I caused a true copy of the foregoing memorandum to be served upon all necessary parties by virtue of electronically filing the same via the Court's CM/ECF system.

*/s/ R. Bradford Bailey*
R. Bradford Bailey