UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:09-cr-10391-SDN-1 |
| v. | ) | |
| | ) | Consolidated with |
| RALPH DELEO | ) | 1:25-cr-10186-SDN-1 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

This matter comes before the Court to determine whether probable cause exists for Mr. DeLeo's alleged violations of his conditions of supervised release and to address Mr. DeLeo's detention status pending his revocation proceedings. *See* Fed. R. Crim. P. 32.1(b)(1)(A); 18 U.S.C. § 3143. Both Mr. DeLeo and the Government have submitted briefs on the issue of detention (ECF Nos. 469, 478, 500), and, on June 26, 2025, the Court held a consolidated preliminary hearing and detention hearing regarding Mr. DeLeo's alleged violations of his conditions of supervised release in the District of Massachusetts and his conditions of supervised release in the Eastern District of Arkansas (which has been transferred to this district). Mr. DeLeo argues that the Government failed to meet its burden in demonstrating probable cause exists for the alleged violations. As for detention, Mr. DeLeo argues that he has established by clear and convincing evidence that he is not likely to flee and does not pose a danger to the safety of any person or to the community.

For the reasons below, the Court finds probable cause exists for Mr. DeLeo's alleged violations of supervised release, and that Mr. DeLeo did not demonstrate by

clear and convincing evidence that he will not flee or pose a danger to any other person or to the community.

## Background

On March 31, 2011, Mr. DeLeo was sentenced in the Eastern District of Arkansas to 144 months of incarceration followed by 36 months of supervised release on one count of conspiracy to possess with intent to distribute cocaine, one count of using a communication device to facilitate a felony drug transaction, and one count of aiding and abetting possession with intent to distribute cocaine. *See* ECF No. 3, *United States v. DeLeo*, 1:25-cr-10186 (D. Mass.). On November 21, 2012, Mr. DeLeo was sentenced in the District of Massachusetts to 199 months of incarceration followed by 36 months of supervised release on one count of racketeering and one count of possessing a firearm as a felon. Mr. DeLeo's Massachusetts sentence ran concurrently with his sentence in the Eastern District of Arkansas. *See* ECF No. 183. On May 28, 2024, Mr. DeLeo began his period of supervised release in both matters.

In early May 2025, the Federal Bureau of Investigation Organized Crime Task Force ("OCTF") began to investigate Mr. DeLeo after a confidential source[1] informed an OCTF officer that Mr. DeLeo was planning to murder federal officials who were involved in his prior cases. ECF No. 478-1, ¶ 11. The source reported to the OCTF officer that a third-party associate[2] of both the source and Mr. DeLeo told the source that Mr. DeLeo had asked the third-party associate to find federal officials' personal identifying

---

[1] The parties agreed to keep the name of the source confidential, and the witness at the preliminary hearing and detention hearing, Trooper Nguyen, referred to the source using pseudonyms. Mr. DeLeo and his counsel know the identity of the actual individual.

[2] The parties also agreed to keep the name of the third-party associate confidential, and Trooper Nguyen also referred to the third-party associate using pseudonyms. Mr. DeLeo and his counsel know the identity of the actual individual.

information, including home addresses and names of immediate family members. *Id.* ¶¶ 13–15. According to the source, the third-party associate had retrieved at least some of the information requested and delivered paper documents containing the information to Mr. DeLeo.

The OCTF used the information from the source in its application for a search warrant, and the OCTF successfully obtained federal search warrants for Mr. DeLeo and his residence. ECF No. 478-8, ¶ 6. The OCTF executed the search on May 9, 2025. *Id.* ¶ 7. The OCTF seized the following items from Mr. DeLeo's home: (1) hard copy packets containing federal officials' personal information, including their addresses; (2) controlled substances, including marijuana[3]; (3) a handwritten note regarding "hyper realistic" silicone masks; (4) a "burglary kit" containing a pry-bar, crowbar, bolt cutters, and a lock-picking kit; and (5) Mr. DeLeo's cell phone. *Id.* ¶¶ 8–10; *see* ECF No. 472. The OCTF interviewed Mr. DeLeo while the search was being conducted, and, in response to their questions, Mr. DeLeo told OCTF officers that he did not receive any assistance in obtaining the federal officials' personal information. ECF No. 478-8, ¶ 11. The OCTF searched Mr. DeLeo's phone, which revealed (1) messages Mr. DeLeo sent to the third-party associate requesting that the third-party associate find the federal officials' personal information, (2) an extensive history of internet searches for federal officials' personal information, and (3) Mr. DeLeo's communications with known felons. *Id.* ¶¶ 10, 12.

---

[3] The search also uncovered what law enforcement suspected to be vials of steroids. At the consolidated preliminary hearing and detention hearing, the parties disputed whether probable cause exists to believe the vials recovered contained steroids. Because I find that in addition to the other allegations, there is probable cause to believe law enforcement uncovered marijuana at Mr. DeLeo's residence, corroborated by Trooper Nguyen's testimony and the photographs of the marijuana, Pl.'s Ex. 7, ECF No. 508, I need not reach this issue at this stage.

3

On May 14, 2025, the United States Probation Department filed a petition to revoke DeLeo's supervised release,[4] alleging he committed the following three violations of the conditions: (1) committing a federal crime by making false statements during an interview with federal law enforcement in violation of 18 U.S.C. § 1001(a)(2); (2) communicating with known felons, including DeLeo's codefendant in the underlying offense; and (3) possessing controlled substances, including marijuana and steroids. ECF No. 461. Law enforcement arrested Mr. DeLeo on May 15, 2025, and he had his Initial Appearance on that petition on the same day. At the hearing, the Government moved for Mr. DeLeo's detention pending his revocation proceeding, and Mr. DeLeo requested a hearing on the same. *See* ECF 467. The Court granted Mr. DeLeo's motion to continue, ECF Nos. 499, 505, and held Mr. DeLeo's consolidated preliminary hearing and detention hearing on June 26, 2025.[5]

## Legal Standard

The legal standards that apply to a preliminary hearing and a detention hearing for an individual accused of violating conditions of supervised release are well-established. A person in custody for violating a condition of supervised release is entitled to a hearing before a judge to determine whether there is probable cause to believe that a violation occurred. Fed. R. Crim. P. 32.1(b)(1)(A). Establishing probable

---

[4] On May 22, 2025, the Eastern District of Arkansas transferred jurisdiction over Mr. DeLeo's matter to the District of Massachusetts. *See* ECF No. 2, 1:25-cr-10186. On June 10, 2025, Probation filed a petition in the 1:25-cr-10186 matter for the same violations identified in the petition Probation filed in the 1:09-cr-10391 matter. The Court held Mr. DeLeo's initial appearance in the 1:25-cr-10186 matter on June 26, 2025, before it commenced with the preliminary and detention hearing in both matters.

[5] By agreement of the parties, the preliminary hearing and detention hearing were considered together by way of the Government presenting one witness–Trooper Elvis Nguyen–who both the Government and Defense counsel questioned in relation to both matters. *See United States v. Ashford,* No. 15-CR-231, 2022 WL 1241228, at *2 (E.D. Wis. Apr. 27, 2022) (noting the "undeniable relationship between the preliminary hearing and detention; a defendant is afforded a preliminary hearing only if he is detained." (citing Fed. R. Crim. P. 32.1(b)(1)(A))).

cause requires only "a reasonable ground for belief of guilt . . . ." *United States v. Diallo*, 29 F.3d 23, 25 (1st Cir. 1994) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

A judge may release a person pending further proceedings under 18 U.S.C. § 3143(a)(1) only if the person shows by clear and convincing evidence that they are not likely to flee or do not pose as a danger to the safety of any other person or to the community. Fed. R. Crim. P. 32.1(a)(6). In order to assess the defendant's risk of flight and danger, the judge employs the factors set forth in 18 U.S.C. § 3142(g), which include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger that the defendant's release would pose to any other person or the community. *See United States v. Loya*, 23 F.3d 1529, 1531 (9th Cir. 1994) ("[I]f a defendant moves for bail pending [their] revocation hearing, the district court shall determine the person's eligibility for release under the standards of release set forth in 18 U.S.C. § 3143."); *United States v. Miranda-Bonilla*, No. 20-1380, 2020 WL 12309184, at *1 (1st Cir. Apr. 2, 2020) (remanding matter of a defendant facing revocation of supervised release who was detained without a bail hearing for further proceedings consistent with . . . Rule 32.1(a)(6), and relevant bail statutes).

## Discussion[6]

### I. Probable cause exists for Mr. DeLeo's alleged violations of supervised release.

Probable cause exists to believe Mr. DeLeo violated his conditions of supervised release as alleged in the petitions. "The government's burden to establish probable cause at the preliminary stage is low . . . . Although mere suspicion does not suffice, probable cause may be found where there is a 'fair probability,' based on the totality of the circumstances, that a defendant committed the '[violation] charged.'" *United States v. Wheeler-Watson*, No. 19-CR-150-1, 2022 WL 17976147, at *2 (D. Mass. Dec. 28, 2022) (alterations in original) (quoting *United States v. Bowie*, No. 14-MJ-0189, 2014 WL 4542974, at *1 (D.R.I. Sept. 12, 2014)).

The May 9 search of Mr. DeLeo's home revealed paper documents containing federal officials' personal information, a hand-written note referencing silicone masks, and marijuana in the form of two "joints." Pl.'s Exs. 4, 6, 7, ECF No. 508. At the hearing, Trooper Nguyen testified that Mr. DeLeo willingly spoke to law enforcement during the search of Mr. DeLeo's home, and, after having been warned of the consequences of lying to a federal officer, Mr. DeLeo claimed he had not received help in obtaining the addresses and other personal information of federal officials or their families. The audio recording and written transcript of the interview corroborate Trooper Nguyen's testimony. *See* Pl.'s Exs. 1, 2, ECF No. 508. The OCTF also obtained Mr. DeLeo's cell phone and conducted a Cellebrite extraction which revealed text messages between Mr. DeLeo and the third-party associate where Mr. DeLeo asked the third party to obtain the

---

[6] In making its determinations, the Court has considered the evidence admitted at the consolidated preliminary hearing and detention hearing. The Court also considered Mr. DeLeo's newly-filed Exhibits P and Q. *See* ECF Nos. 500-17, 500-18.

federal officials' personal information. The Cellebrite extraction data also revealed extensive and numerous searches for federal officials and their potential family members, silicone mask material, spy gear, body cameras and more. Pl.'s Ex. 5, ECF No. 508. And the extraction data revealed that Mr. DeLeo had been in contact with known felons.

## II. Mr. DeLeo failed to demonstrate that he does not pose a risk of flight or a danger to the safety of others.

Mr. DeLeo has not proven by clear and convincing evidence that he does not pose risk of flight or a danger to the safety of any other person or the community if released. The nature and circumstances of the alleged offenses here are particularly concerning. Among other allegations, Mr. DeLeo is alleged to have violated federal law by making false statements to federal officers. Mr. DeLeo contends that the evidence against him is weak because the source of information is unreliable, and that the violations are minor. To the contrary, the false statements concern Mr. DeLeo's request for and possession of documents containing federal officials' home addresses and their family members' names. Furthermore, data obtained from Mr. DeLeo's cell phone demonstrates that he conducted hundreds of searches for federal officials' addresses and other personal information, lifelike silicone masks, burglary kits, spy kits, body cameras, and more. Also, Mr. DeLeo has previously stated that he wanted to "chop the heads off" of federal agents involved in his case.

Mr. DeLeo's argues, with support from emails in 2015, that his searches for federal officials' information related to Mr. DeLeo's legitimate legal challenges to his underlying convictions. *See* Def.'s Ex. O, ECF No. 508. However, in light of the amount of time between those emails and the current search data recovered from Mr. DeLeo's

7

cell phone, and the extensive nature of Mr. DeLeo's present attempts to obtain the federal officials' personal information, Mr. DeLeo's argument is insufficient to meet his high burden for release.

Mr. DeLeo has an extensive criminal history that involves violent crimes. *See* Pl.'s Ex. 10, ECF No. 508. His criminal record began at the age of 16 and includes convictions for murder, armed robberies, carrying dangerous weapons, attempted kidnapping, and more. Furthermore, Mr. DeLeo has twice attempted to escape custody—once successfully. During both escape attempts, Mr. DeLeo demonstrated dangerous behavior by grabbing the firearms of law enforcement or security staff while in hospital settings and using the firearms as a means to escape. Mr. DeLeo's 2011 escape attempt occurred just before he received designation for his sentence in the Eastern District of Arkansas—the matter for which he is now on supervised release—and when he was 68 years old, which, like his current age, is outside the age frame where one might otherwise think a defendant is capable of such activity. Pl.'s Ex. 8, ECF No. 508. And Mr. DeLeo's 2011 escape attempt occurred over 30 years after the initial escape, well beyond the timeframe one might otherwise think a defendant would attempt to repeat such an elaborate escape. Thus, Mr. DeLeo has not proven by clear and convincing evidence that he is without the capabilities or motive to flee and or that he does not pose as a danger to the safety of others.

Mr. DeLeo argued that his numerous health ailments prevent him from acting out any violent plans or plans of escape, and that his health issues are being left untreated. To the extent he offers the need for medical care as a basis for release from detention at this preliminary stage, nothing in 18 U.S.C. § 3142(g) allows the Court to consider such evidence in assessing detention status.  To the extent Mr. DeLeo posits his

medical needs weigh in his favor as part of his physical and mental condition under § 3142(g)(3)(A), they are not sufficient to overcome the fact that he poses a substantial risk to the specific federal officials he has already investigated and others. Indeed, Mr. DeLeo's health issues existed in substantially the same manner during the time frame he is alleged to have committed these violations. Yet, there is no evidence that these health issues thwarted Mr. DeLeo's capabilities.

Video and other evidence indicates that while in custody now for the alleged violations of the supervised release conditions, and while seeking release from detention, Mr. DeLeo made more false statements to correctional officers, claiming that an unknown individual placed a letter on Mr. DeLeo's bed detailing the crimes committed by the confidential source. Video surveillance evidence contradicts this tale and indicates that it was Mr. DeLeo who gave a letter *he* wrote to another inmate. Pl.'s Ex. 14, ECF No. 508. Mr. DeLeo's determination to engage in deceitful acts even while in custody facing potential revocation of his supervised release further indicates Mr. DeLeo's risk of flight and danger to the community, and he has not proven otherwise.

Mr. DeLeo has not demonstrated to the Court by clear and convincing evidence that he does not pose as a flight risk or that he is not a risk to the safety or danger to people and the community.

## Conclusion

For the reasons above, the Court finds probable cause exists for Mr. DeLeo's alleged violations of supervised release. The Court also **DENIES** Mr. DeLeo's motion for release and **ORDERS** that Mr. DeLeo remain in custody pending his revocation hearing.

**SO ORDERED.**

Dated this 30th day of June, 2025.

                                                           /s/ Stacey D. Neumann
                                                          U.S. DISTRICT JUDGE